# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SANTANDER SECURITIES LLC**, and **SANTANDER BANK, N.A.**, | : : : : |
| | Civil Action No. |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| **ALYSON BASSO,** and **JONATHAN LEE,** | : : |
| | : |
| Defendants. | : |

## <u>VERIFIED COMPLAINT – INJUNCTIVE RELIEF REQUESTED</u>

### INTRODUCTION

Plaintiffs Santander Securities LLC and Santander Bank, N.A. (collectively, "Santander") hereby bring this action in aid of arbitration to enjoin defendants Alyson Basso ("Basso") and Jonathan Lee ("Lee") from misappropriating and using Santander's confidential and proprietary trade secret information, including but not limited to, Santander's confidential customer lists, customer financial information, and business records, and from soliciting retail securities brokerage, investment advisory services and insurance business in violation of their employment agreements with Santander, and for damages arising from their breach of contract, misappropriation of trade secrets, breach of fiduciary duty and unfair competition. Concurrently with this verified complaint, Santander files a motion for a temporary restraining order and preliminary injunction.

Because the parties to this matter are registered and affiliated with the Financial Industry Regulatory Authority ("FINRA"), the substantive claims are subject to mandatory arbitration through the FINRA arbitration Santander is initiating concurrently with this proceeding. In

accordance with FINRA rules, this action and application for injunction is being initiated to preserve the *status quo* until a FINRA arbitration panel is able to convene and hear this dispute. In the event this Court enters injunctive relief, FINRA rules mandate that, within 15 days thereafter, an expedited hearing will be held by the assembled arbitration panel in the vicinity of defendants' residences to consider whether to make the preliminary relief sought of this Court permanent.

### JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 based upon a federal question (Defend Trade Secret Act). Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(2).

### PARTIES

1.      Santander Securities LLC is a Puerto Rico limited liability company having its principal place of business in Boston, Massachusetts.  The only member of Santander Securities LLC is Santander Holdings USA, Inc., a Virginia corporation with its principal place of business in Massachusetts.  Santander Securities LLC is a registered broker-dealer and investment adviser.

2.      Santander Bank, N.A. is a national banking association having a main office and principal place of business in Boston, Massachusetts.

3.      Basso is an individual whose last known residence is in Windham, New Hampshire.  Prior to her resignation, Basso worked for Santander in the northern suburbs of Boston where a substantial part of the events giving rise to the claims in this case occurred.

4.      Lee is an individual whose last known residence is in Newburyport, Massachusetts.  Prior to his resignation, Lee worked for Santander in the northern suburbs of Boston where a substantial part of the events giving rise to the claims in this case occurred.

## FACTUAL BACKGROUND

4.      Santander Securities LLC offers retail securities brokerage, insurance and investment advisory services through FINRA registered representatives who are also employees of Santander Bank, N.A. designated as financial consultants.

5.      Basso worked as licensed banker for Santander from 2006 until 2011 when she began working as a Santander financial consultant until her resignation on January 17, 2020.

6.      From on or about October 2004 until his resignation on January 17, 2020, Lee worked as a financial consultant for Santander.

7.      Basso and Lee worked together for Santander prior to their resignations in a partnership pursuant to which they would share responsibilities for assigned clients and evenly split the related commissions generated from such relationships.

8.      Financial consultants like defendants are responsible for maintaining investment account relationships with Santander's clients.

9.      Santander expends significant resources in marketing, training, compliance, and other overhead expenses in order to obtain new client relationships and maintain existing ones.

10.      Santander conducts repeat business with many of its clients by selling additional financial products to suit the changing needs of those customers.

11.      Most all of Santander's investment and/or insurance client relationships are generated from prospect lists derived from Santander's retail bank data and from referrals by members of the retail bank branch team, including licensed bankers. Such bank partners are

3

employees at branch locations and regional offices of Santander.  The face-to-face contact the

Santander bank partners (and not necessarily the financial consultants) have with Santander

customers is a significant aspect of business generation for Santander's financial consultants.

12.     Santander estimates that substantially all of the Santander client relationships for

which defendants were responsible were either assigned to them from existing Santander books

of business or the result of referrals from Santander bank partners.

13.     Because of the sensitive nature of the financial information provided by clients

and the competitive nature of the retail securities brokerage, investment advisory and insurance

business, Santander takes numerous precautions to protect its trade secrets and confidential

business and client information.

14.     Santander limits dissemination of such information to those employees who need

to know and takes numerous electronic and physical security measures to protect such

information, including requiring passwords which are periodically updated to access confidential

electronic material, and enforcing clean-desk and locked-file policies and procedures.

15.     As an additional limitation on the dissemination of such information Santander

also requires employees, including defendants, to agree to nonsolicitation and nondisclosure

provisions as a condition of employment and as a condition of registration as an associated

person of FINRA member firm Santander Securities LLC.

16.     Each employee of Santander is subject to its Santander US Code of Conduct (the

"Code of Conduct").  Defendants affirmatively acknowledged their agreement to be bound by

the Code of Conduct.

17.     A true and accurate copy of Sections 2.8 and 2.10 of the Code of Conduct in effect when they resigned (together with Basso's and Lee's acknowledgements to be bound by its terms) are attached hereto as **Exhibit A**.

18.     The Code of Conduct defines Santander assets to include, "All records of the accounts of customers, and any other [Santander] records and books." Ex. A, §2.8, p. 24.  The Code of Conduct states that Santander employees shall "[n]ot use [Santander] assets… for personal or outside activities…" and shall "[r]eturn [Santander] assets when required or requested (e.g., at termination or when you leave [Santander])."  *Id.* §2.8, pp. 25-26.

19.     The Code of Conduct further provides:

> You shall not disclose confidential information acquired while serving as…[an employee of Santander]. It is essential that you maintain this standard at all times. This confidentiality obligation continues even after your professional relationship with [Santander] terminates, whether voluntarily or involuntarily.

> You shall not derive monetary gain or personal or professional benefit from confidential information that you obtained only by reason of your role with [Santander], whether such information relates to [Santander], its customers, or anyone with whom [Santander] has business relations.

*Id.* § 2.10.1, p. 32.

20.     The Code of Conduct also states:

> Our customers (both individuals and businesses) entrust us with important and confidential information. [Santander] is legally obliged under a number of regulations to protect the privacy of a customer's personal information including 501(a) requirements of the Gramm-Leach-Bliley Act. A violation of this trust is a serious matter and can impact [Santander's] reputation and have significant legal and regulatory consequences.

> It is imperative not to discuss or share a customer's personal information with anyone outside of [Santander] or with…other [Santander employees] who do not have a business need to know the information…

Examples of information that must be kept confidential (except when disclosure is authorized pursuant to this Code or [Santander's Privacy Policy] or is required by law) include: . . .

- Customer account information (e.g., account numbers and balances, information on a loan application, paycheck amounts, overdrafts, deposits, withdrawals, name, and addresses of [Santander] customers). . . ;

- Information regarding individuals and companies that conduct business with [Santander]….

*Id.* §2.10.4, pp. 33.

21.     As a condition of their employment with Santander, and in order for defendants to provide investment related services to Santander's customers, each of Basso and Lee had to become a registered representative of Santander Securities LLC and agree to be bound by the terms of an employment agreement.  Therefore, when they first became registered, they executed a Registered Representative Agreement with Santander (the "Representative Agreement") evidencing how they were a registered representative of Santander Securities.

22.     From time to time thereafter, Santander required its financial consultants to agree to the terms of updated Representative Agreements as a condition of their continued at-will employment with Santander.

23.     In further consideration for the covenants in the updated Representative Agreements, defendants continued their affiliation with a broker-dealer and investment adviser as required for them to provide investment related services, and they received licensing and compliance support, training, compensation, marketing, retail bank branch referrals and prospecting on their behalves, access to confidential client and client prospect lists and Santander's office facilities, research and investment opportunities, facilities for executing, processing and clearing transactions, and other good and valuable consideration.

24.     A true and accurate copy of the standard form Representative Agreement in effect as of the date of their resignation, together with each defendant's electronic signature thereon, is attached hereto as **<u>Exhibit B</u>**.

25.     As with the Code of Conduct, the Representative Agreement executed by each of the defendants also contains prohibitions on the disclosure of Santander's clients and their business and account information.  In particular, Section 8 provides:

> a.  In connection with your employment with SANTANDER you will obtain or have access to certain proprietary, privileged or other confidential information of SANTANDER's clients or customers, or leads, prospective clients or customers.  It is understood and agreed that the identities of and all information concerning such customers and prospects, whether maintained on a physical piece of paper (in original or copied form), stored electronically on your computer, PDA, BlackBerry, mobile phone or other device, or otherwise retained in your memory or memorialized in any form whatsoever, are confidential information, constitute a trade secret, and are the sole and exclusive property of SANTANDER ("Confidential Information").  Confidential Information also includes, but is not limited to, business plans, strategies, products, services, programs, systems, databases, methods of operation, financial information, policies, procedures, or personnel information of SANTANDER, as well as any non-public information disclosed by a client or customer, potential client or customer, or other third party which SANTANDER has agreed or is otherwise, obligated to keep confidential, including, but not limited to, financial information concerning such individual or entity.  You agree that Confidential Information is extremely valuable and that SANTANDER takes all reasonable measures to maintain its confidentiality and to guard its secrecy.  This information is not generally known outside of SANTANDER and within SANTANDER this information is confidential and is used only on a "need to know" basis.  You acknowledge and agree that this information is developed and acquired by great expenditures of time, effort, and money and that it is unique and cannot be lawfully duplicated or easily acquired.
>
> b.  In light of the highly competitive nature of the financial services industry, you agree to hold all Confidential Information in strictest confidence and to use such Confidential Information

7

> only as necessary in the performance of your duties for SANTANDER.  Upon termination of your employment for any reason, you will immediately return all Confidential Information, relinquish access to, possession of and control over, any such information in any form, and you agree never to use or disclose such information even if retained in your memory.  You acknowledge and agree that this means that upon termination of your employment you may not use client or prospects lists you could otherwise recreate from your memory.

Ex. B., § 8, pp. 6-7.

26.     With respect to the nonsolicitation of Santander's customers, Section 9(b) of the

Representative Agreement mandates:

> For a period of twelve (12) months following the termination of your employment with SANTANDER for any reason, you agree that you will not communicate, directly or indirectly in whatever form, with any customer, client or potential client of SANTANDER whose name became known to you as a direct or indirect result of your employment with SANTANDER (whether you or such customer, client or potential client first initiates contact) for the express or implied purpose of inviting, encouraging or requesting such customer, client or potential client: (i) to transfer their securities brokerage, investment advisory, bank or insurance business to you and/or your new employer; (ii) to open a new account or purchase a new policy with you and/or your new employer; or (iii) to otherwise discontinue or reduce such client's existing business relationship with SANTANDER or conduct securities brokerage, investment advisory, bank or insurance business with someone other than SANTANDER.  You agree that the foregoing prohibition includes any targeted mailing, telephone call, or other communication that is made directly to one or more customers, clients, or potential clients of SANTANDER.

*Id.*, § 9(b), pp. 7-8.

27.     The Representative Agreement also prohibits each defendant from recruiting any

employee of Santander, including the other defendant, to terminate his or her employment with

Santander, providing in Section 9(c):

> At all times during your employment with Santander, and for a period of twelve (12) months following termination of such employment for any reason, you agree

8

not to encourage, recruit or solicit, either directly or indirectly, any employee or representative to terminate his or her employment with Santander, or to join you or any new firm employing you or in which you may become affiliated or registered, or to otherwise interfere with the relationship between Santander and any of its employees.

*Id.*, § 9(c), p. 8.

28.     The Representative Agreement also contains each defendant's agreement to the injunctive relief Santander seeks in this case. *Id.*, § 9(d), p.8.

29.     While not imposing undue hardships on defendants, the foregoing restrictions protect Santander's legitimate interest in proprietary information, as well as in protecting customer privacy.

30.     These covenants also preserve Santander's interests in their long-term relationships with customers and customer goodwill by protecting Santander from the deflection of customers by former financial consultants by means of opportunities Santander gave them.

31.     The covenants also allow defendants to compete *anywhere* so long as Santander confidential information is not utilized and, for a period of twelve months, Santander's customers who became known to them during their Santander employment are not solicited.

32.     Defendants would have an unfair competitive advantage if permitted to use such institutional (as opposed to individual) goodwill against Santander. *See*, *e.g.* 15 U.S.C. §45(a)(1) (declaring unfair methods of competition unlawful).

33.     The covenants in the Representative Agreement and Code of Conduct also protect Santander's customers' privacy, which Santander is bound to safeguard.  *See*, *e.g.*, 15 U.S.C. § 6801 *et seq.* (Gramm-Leach-Bliley Act) (the Federal Government, in recognizing the importance of maintaining and preserving financial information enacted the Gramm-Leach-Bliley Act,

which sets minimum requirements for protecting client privacy); 17 CFR Part 248 (Regulation S-P); *see also* M.G.L. c. 93H (data breach statute).

34.     Santander's customers depend on Santander to keep their financial affairs confidential and to the extent former Santander financial consultants improperly use that information it also adversely impacts the business reputation of Santander.

35.     The identity of Santander's clients is not publicly available, and Santander goes to significant lengths to protect its clients' privacy and its proprietary client list.

36.     The covenants in the Representative Agreement and Code of Conduct provide Santander with a means of ensuring that its current and former financial consultants preserve the confidentiality of customer information.

37.     On January 17, 2020 (i.e., the Friday before the Martin Luther King bank and stock market holiday) at shortly after 1:00 p.m., each of the defendants sent a blank cover email to their Santander manager, Daniel Fitzmaurice, to which they attached a short letter stating their resignation from Santander.

38.     Each defendants' resignation letter was based on the same form and included a request that Santander provide a telephone number set forth in the letter to those Santander clients who requested to contact such defendant.

39.     When Mr. Fitzmaurice called the telephone numbers after receiving the resignation letters, the voicemail greeting he heard still included the standard disclaimer statements Santander instructs its financial consultants to use on such greetings.  On information and belief, the telephone numbers were for defendants' personal cell phones.

40.     Santander had a policy that its financial consultants, including defendants, not use personal cell phones for Santander business; instead, Santander had issued each defendant a business cell phone.

41.     By using their personal cell phones to conduct Santander business in violation of Santander policies, defendants would have saved confidential Santander client contact information on those devices.

42.     On information and belief each, each defendant retained confidential Santander information on his or her personal cell phone prior to resigning.

43.     The resignation letters did not identify the defendants' new firm.  However, according to their publicly available FINRA BrokerCheck Reports, defendants resigned from Santander in order to join the financial services firm, Patriot Financial Group ("Patriot").

44.     Patriot is an independent investment advisor registered with the SEC, and it offers securities through an affiliation with FINRA registered broker-dealer, Securities America.

45.     Patriot is a direct competitor of Santander in the region defendants formerly serviced for Santander.

46.     Custodial and back office support are provided to Patriot by TD Ameritrade Institutional which markets its ability to assist advisors, like defendants, transition their client relationships using its "Business Transition Services" team.

47.     According to the Guidebook, *Becoming an independent RIA* available for download on TD Ameritrade Institutional's website[1]:

> Depending on where you work today, you could violate your employment agreement and introduce unwanted risk by making a communication misstep.  It is always advisable to contact legal counsel before discussing a transition plan

---

[1] "Becoming an Independent RIA," TD Ameritrade Institutional, accessed January 21, 2020: https://www.tdainstitutional.com/content/dam/institutional/resources/561311_Mover-Program_Guidebook_FINAL.pdf (37).

11

(either verbally or in writing) with your clients. . . . As part of your preparation, you will pick the day you want to resign from your existing firm and start your independent advisory business.  Through your transition planning process, ***you should be able to immediately contact clients and initiate transfers the day of your resignation.***

(Emphasis added).

48.     On information and belief, defendants continue to work in partnership to service clients for their new firm, as they had at Santander.  Defendants have also formed an entity, Hayden Financial Group LLC, of which they are the only managers, having a principal place of business in Middleton, Massachusetts.  The entity was legally formed with the Secretary of the Commonwealth of Massachusetts less than hour after defendants sent their resignation letters to Santander.

49.     Defendants production for Santander in the few months prior to their resignations declined significantly over the year prior.

50.     Defendants used Santander's proprietary customer lists and other confidential information to contact Santander customers in order to solicit their investment services business in violation of their obligations under the Representative Agreement and Code of Conduct.

51.     Notwithstanding their express agreement to not make targeted telephone calls directly to Santander clients, defendants called Santander clients for the express or implied purpose of inviting, encouraging or requesting them to transfer their brokerage, investment advisory, and/or insurance business to them and Patriot.

52.      Santander client with the initials "ZZ"[2] told Santander that Lee and Basso called him together shortly following their resignations to tell him they resigned from Santander to join another firm and to invite him to transfer his investments to them at their new firm.

53.      After receiving the call from defendants, ZZ explained to Santander how he visited the Santander bank branch in Wilmington Saturday morning because he wanted to make sure that his investments were still safe at Santander.

54.      Santander assigned ZZ's client relationship to defendants in or around January 2017 when the financial consultant formerly assigned the relationship left Santander.

55.      During their tenure at Santander, defendants had a practice of calling Santander clients together, as they did with ZZ, where Lee initiated the calls and announced to the client that he was there with Basso.  On information and belief, defendants utilized the same practice of calling together in their post-resignation solicitation of Santander clients.

56.      Santander client with the initials "JKS" told Santander that he was already aware of defendants' resignation when Santander called him the day after they resigned (i.e., Saturday, January 18th) to tell him that defendants had left the firm.  JKS relayed how he already received a call from Lee who asked JKS to transfer his accounts to defendants at their new firm.  JKS told Santander that he would transfer his investments to defendants.

57.      Santander client with the initials "CY" told Santander that he received a call from Lee but that he wasn't sure yet what he would do with his investments, although he acknowledged he would "disappoint someone" with whatever decision he made.

---

[2] In order to protect the privacy of Santander's customers, such customers are identified herein only by their initials. Santander will disclose their full identities on an *in camera* basis and/or upon entry of an appropriate protective order.

58.     Santander client with the initials "ML" relayed to Santander that she had received a call from Lee the day after he resigned during which he asked her to transfer her investments to defendants at their new firm.  ML commented to Santander how she was surprised that defendants were working over the weekend.

59.     Santander client with the initials "GC" told Santander that he "heard through the grapevine this [January 18th] weekend" that defendants had left Santander.  On information and belief, GC received a call from defendants during which they solicited his investment and/or insurance business.

60.     Santander client with the initials "PL" indicated to Santander how he received a call from defendants over the weekend and they want him to move his investments with them to their new firm.  PL relayed how defendants assured him that all of his investments can move over to their new firm and explained how their new firm was affiliated with TD Ameritrade.  PL told Santander he had not decided whether he would transfer his investment accounts to defendants.

61.     Santander client with the initials "JP" told Santander on January 21st that he had received a call from Lee about an hour earlier and that defendants wanted him to transfer his accounts to them at their new firm.  JP indicated that he did not want to transfer because given how he was over eighty years old it was too much for him to go through a switch.

62.     Santander client with the initials "JS" told Santander that he received a call from Lee on January 21st but that he planned to keep his relationship with Santander.

63.     Santander client with the initials "SC" said to Santander that he received a call from defendants over the January 18th weekend and that he would be transferring his 401(k)

rollover to them at their new firm.  SC stated that he would keep his retail bank accounts at Santander.

64.     Santander client with the initials "FS" visited a Santander branch on January 21st and asked to see Lee because she had missed a call from him over the weekend. On information and belief, the call to FS was, like the other calls, for purposes of encouraging FS to transfer her investments to defendants at their new firm.

65.     In addition to economic harm, the defendants' misappropriation of confidential Santander customer information and wrongful solicitation of Santander customers has harmed Santander's relationship with those customers specifically and its business reputation generally.

**COUNT I**
**Breach of Contract**

66.     Plaintiffs repeat and reallege the allegations of paragraphs 1-65 above.

67.     Defendants have deliberately breached their obligations to Santander under the Representative Agreement and the Code of Conduct by, among other things, misappropriating and utilizing Santander's confidential and trade secret information to improperly solicit Santander clients.

68.     In addition, defendants have caused plaintiffs damages in an amount to be determined in the FINRA arbitration proceeding.

**COUNT II**
**Breach of Fiduciary Duty**

69.     Plaintiffs repeat and reallege the allegations of paragraphs 1-68 above.

70.     At all times during their employment, defendants owed plaintiffs a fiduciary duty of complete loyalty and fidelity to plaintiffs' interests, were obligated to act solely and

exclusively in plaintiffs' best interests, and were prohibited from acting in a manner contrary to plaintiffs' legitimate business interests.

71.     Defendants breached their fiduciary duties and obligations to plaintiffs by (a) misappropriating plaintiffs' confidential client lists (which they must have used to contact Santander clients), intending to use those lists for his personal gain, and (b) upon information and belief, while still employed by Santander, arranging for the solicitation of Santander customers to transfer their accounts to their new firm.

72.     As a direct and proximate result of defendants' breach of their fiduciary duties, plaintiffs have suffered and will continue to suffer irreparable injury and financial losses.

### COUNT III
### Misappropriation of Trade Secrets and Confidential Information

73.     Plaintiffs repeat and reallege the allegations of paragraphs 1-72 above.

74.     Plaintiffs have protectable confidential information in their client names, contact information, and data, including suitability information, investments and investment histories, financial plans, and financial goal information, prospective client names, addresses, and data, and know-how concerning methods of operation, client lists  and other financial information.

75.     Plaintiffs derive economic value from this confidential information, due to it not being generally known to other persons who could obtain economic value from its disclosure or use.

76.     Plaintiffs have made efforts that are reasonable under the circumstances to maintain the secrecy of such information.

77.     Defendants are using this information to compete with plaintiffs and to injure plaintiffs' relationships with their clients.

78.     The disclosure and use of such information constitutes a misappropriation of trade secrets in violation of common law and Mass. Gen. L. c. 93 §42 *et seq.* (Uniform Trade Secret Act).

79.     Defendant have caused plaintiffs damages from the misappropriation and use of their confidential information in an amount to be determined in the FINRA arbitration proceeding.

## COUNT IV
## Unfair Competition

80.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-79 above.

81.     Defendants' conduct described above constitutes unfair competition in violation of common law and Mass. Gen. L. 93A.

82.     As a direct and proximate result of the acts and course of conduct of defendants described above, plaintiffs have suffered and will continue to suffer irreparable injury and financial harm.

## COUNT V
## Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836(b)

83.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-82 above.

84.     Plaintiffs' client list and the financial information/status of those clients is a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) because it represents a form of business and financial information which Santander has taken reasonable measures to keep secret, and it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

85.     Defendants misappropriated plaintiffs' trade secret client list by improper means.

86.     Plaintiffs' trade secret list is related to its brokerage, investment advisory and insurance services used in, or intended for use in, interstate commerce.

87.     Defendants' misappropriation of plaintiffs' client list was willful and malicious. Plaintiffs are entitled to injunctive relief to prevent defendant's continued misappropriation and damages, including exemplary damages, under the Defend Trade Secrets Act, 18 U.S.C. §1836(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Santander Securities LLC and Santander Bank, N.A. respectfully request that this Court grant the following injunctive relief pending a final decision by FINRA on permanent injunctive relief and damages:

1.     Restrain defendants, through the period ending January 17, 2021, from communicating directly or indirectly in whatever form, with any customer, client or potential client of Santander whose identity became known to them as a direct or indirect result of their employment with Santander (regardless of whether any defendant or any such customer, client or potential client first initiates/ed contact) for the purpose of inviting, encouraging, or requesting such customer, client or potential client: (i) to transfer their securities brokerage, investment advisory, bank or insurance business to them and/or their current firm; (ii) to open a new account or purchase a new policy with them and/or their current firm; and/or (iii) to otherwise discontinue or reduce such client's existing business relationship with Santander or conduct securities brokerage, investment advisory, bank or insurance business with someone other than Santander;

2.     Compel defendants to return to Santander immediately all confidential information of Santander or Santander's clients or customers, or leads, prospective clients or

customers, in their possession, custody or control including, but not limited to, customer information, lists and records, business plans, strategies, products, services, programs, systems, databases, methods of operation, financial information, policies, procedures or personnel information of Santander, as well as any non-public information disclosed by a client or customer, potential client or customer, or third party which Santander has agreed or is otherwise obligated to keep confidential, whether original, copied, duplicated, reproduced, computerized, handwritten, created from memory, compiled, or stored in any way whatsoever including electronically stored information;

3.      Restrain defendants from misappropriating, disseminating, disclosing, copying or using, in whole or part, any of plaintiffs' confidential information or trade secrets, including customer lists and account information in whatever form or format;

4.      Restrain defendants from misappropriating, disseminating, disclosing, copying or using, in whole or part, any documents or information relating in any way to Santander's business that defendants obtained directly or indirectly through their employment with Santander;

5.      Restrain defendants from destroying, erasing, disposing of, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in electronic format or on computer media) in any of their possession, custody or control, which were obtained from or contain information derived from Santander's records, which pertain to Santander's customers that defendants either served or whose names became known to them as a result of their employment with Santander, or which relate to any of the events alleged in this verified complaint; and

6.      Award plaintiffs such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted,

Plaintiffs,
*Santander Securities LLC*
and *Santander Bank, N.A.*
By their attorney,


/s/ David M. Belcher
David M. Belcher, BBO# 636680
BELCHER FITZGERALD LLP
Two Oliver Street, Suite 302
Boston, MA 02110
dbelcher@belcherfitzgerald.com
Dated:  January 22, 2020        p(617) 368-6890; f(617)368-6890

**EXHIBIT A**
**<u>Code of Conduct - §§2.8 and 2.10</u>**

# Santander US



# CODE OF CONDUCT

Classification: INTERNAL



official activity or positions of Santander US may become blurred. The massive reach of social networks means this can generate operational, legal and other risks, especially reputational risk. Therefore, all Employees are personally responsible for the content they post online in a personal capacity. You should be mindful that your social media activity, even if done off premises and while off-duty, could affect Santander's legitimate business interests. Consequently, you should always treat social networking sites and activities as if they were publicly accessible and be cognizant of appropriate conduct when engaging in social media activity that identifies an affiliation with Santander or relates in any way to Santander business, Employees, customers, suppliers, or competitors. You should not engage in social media activity on behalf of Santander US, whether on your own personal media or on Santander sponsored media, unless expressly authorized to do so by Santander's Corporate Marketing Social Media Team.

#### 2.7.2.1 Social Media Activity

Social media activity includes all types of postings on the Internet, including but not limited to, social networking sites (such as, Facebook©, or LinkedIn©); blogs and other on-line journals and diaries; bulletin boards and chat rooms; microblogging, such as Twitter©; and the posting of video on YouTube© and other similar media. You must comply with the guidelines set forth in the Team Member Handbook whenever social media activity identifies you as a Santander Team Member or relates in any way to Santander business, employees, customers, suppliers, or competitors. You should refrain from defamatory and discriminatory comments, insults and any other comment that could be interpreted as harassment or intimidation, incitement to hatred or abusive to another person; obscene language or inappropriate images.

#### 2.7.2.2 Messaging Applications

Channels of communication, which could include the sending of text messages and voice calls, as well as video calls, and other media and documents through social media or mobile applications (i.e. WhatsApp) must be approved by your Compliance function prior to usage for any business purposes.

### 2.8    Santander US Assets: Use of Corporate Assets

You must use Santander US assets for legitimate Santander US business only. You also must safeguard Santander US assets against cyber-related risk, theft, loss, damage, waste or abuse. Although you have a responsibility to safeguard Santander US property, at no time should you ever put yourself or others at risk to do so.

Corporate assets include:

- Physical assets, such as office furnishings, equipment, supplies, and fixtures, whether leased or owned by Santander US;

- All records of the accounts of customers, and any other Santander US records and books (e.g., internal finance and accounting records, merger/acquisition plans and product/service development plans);


- Technological assets, such as computer hardware, software and information systems;

- Intellectual property, such as copyrights, service marks, trademarks, patents, information about products, services, systems, courses, policies, manuals, programs, projects, and procedures, videos, surveys, reports, studies, marketing materials and, in general, all know-how, projects, and work developed for or created by Santander US or created by third parties for Santander US;

- Financial assets, such as cash, securities and credit cards; and

- The Santander US name, brand, image and all customer relationships as well as data obtained as a result of those relationships.

***Use of the Assets of Santander US***

You are allowed to reasonably use Santander US communications devices, such as internet, e-mail and telephone, for responsible personal use. Responsible personal use means that your use of Santander US assets must not interfere with the needs of the business, encumber Santander US assets, and/or negatively impact or disturb your work or the work of other Employees.

Information that you create, send, receive, download, or store on Santander US electronic or telephonic equipment is Santander US property. Santander US reserves the right to monitor, review, access, record, and disclose data as appropriate and subject to applicable laws and regulations.

You shall:

- Refrain from using Santander US assets in any way that would violate applicable laws or internal policies, such as use or sale of controlled substances, harassment, transmission of sexually explicit material, or gambling.

- Ensure that any spending of Santander US funds is authorized and for proper business purposes.

- Return Santander US assets when required or requested (e.g., at termination or when you leave Santander US).

- Limit use of your Santander US e-mail address to registration on professional or industry websites, and not use it to register elsewhere.

- Not use the Santander image, name, or brand other than for appropriate, professional use.

- Not send, forward or transmit Santander US information to an external e-mail address, website, or similar platform without authorization (including from the information owner if appropriate), a non-disclosure agreement or an equivalent protective mechanism is in place, and proper precautionary measures have been taken (i.e., encryption or data classification label).  For



further information, please refer to the *SHUSA Acceptable Use Standard* and *Santander US Data and Information Protection Standard*.

- Not send, forward or transmit Santander US information to your personal e-mail account, personal messaging application, or similar platform for any reason.

- Not use Santander US assets – including, but not limited to, office supplies, space, and work hours – for personal or outside activities, unless they are approved charitable or philanthropic activities within Santander US policy parameters.

***Travel, Entertainment, and Business Expense***

You must exercise reasonable judgment with regard to all business expenditures and comply with the contents of the *Santander US Travel and Entertainment Policy* as well as any standards and procedures developed by your Subsidiary.  Supervisory approval is required in certain circumstances prior to booking business travel arrangements or organizing customer entertainment.

Failure to submit expense reports timely may result in denial of payment. Falsification of expense reports may result in disciplinary action up to and including termination of employment.

Violations of your expense policy will be brought to your attention and the attention of your direct manager. Repeat offenses will be escalated to HR and may result in disciplinary action, up to and including termination of employment.

***Purchase or Sale of Assets or Services to Santander US***

Other than pre-approved employee benefits, you shall enjoy no advantage over the general public in the purchase or sale of any assets or services offered to the public including, but not limited to, Santander US properties, real estate, securities, or any other real or personal property. The terms and conditions of these types of transactions with Employees shall not be less favorable to Santander US than those offered to or by independent third parties. Services and assets shall be sold or purchased in accordance with normal business practices.

## 2.9    Financial Crime Prevention and Detection

This section provides guidance on your responsibilities with respect to a number of financial crimes. In many cases, references are made to other, more detailed policies that you are required to read and understand; all policies can be found on policyIQ.

### 2.9.1 Anti-Money Laundering

All Subsidiaries and their Employee and Directors must comply with anti-money laundering ("AML") and counter-terrorism financing ("CTF") laws and regulations, and guard against the use of Santander US products and services for money laundering, terrorist financing, or other illegal activity. Accordingly,



Operations, Operational Risk and Legal and Corporate Affairs). Santander has reviewed its policies, procedures and controls to ensure that these principles are covered. A formal internal attestation has been executed by the CEO, head of the business and each principal owner from each functional area, to ensure Santander US' compliance with the Global Code. If you have questions concerning the Global Code, consult with your Compliance function.

## 2.10  Privacy/ Confidentiality/ Information Security

Confidential information is information obtained (or derived) from non-public sources where a contractual or other expectation of privacy and/or confidentiality exists, including information considered proprietary. Disclosure of this information to unauthorized parties is considered a significant risk which could result, directly or indirectly, in adverse financial, reputational, regulatory and/or legal consequences. For more information on Santander US data and information classification including confidential information, please refer to the *Santander US Data and Information Protection Standard*. If you suspect a breach or violation as it relates to privacy please contact SHUSA Compliance.

### 2.10.1 Confidential Information Acquired While Serving as a Santander US Director, Officer, or Employee

You shall not disclose confidential information acquired while serving as a Director, officer, or Employee of Santander US. It is essential that you maintain this standard at all times. This confidentiality obligation continues even after your professional relationship with Santander US terminates, whether voluntarily or involuntarily.

You shall not derive monetary gain or personal or professional benefit from confidential information that you obtained only by reason of your role with Santander US, whether such information relates to Santander US, its customers, or anyone with whom Santander US has business relations.

### 2.10.2 Confidential Information Acquired From a Previous Employer or Role

Employees must not bring, disseminate, or share (including via training or communications) confidential or proprietary information belonging to a previous employer or anyone else, to Santander US. This includes information or documentation in all formats, whether written, digital, e-mail or otherwise.

### 2.10.3 Confidential Supervisory Information ("CSI")

Regulators have supervisory authority over Santander US entities. Non-public, confidential information and documents prepared by, on behalf of, or for the use of regulators must be kept confidential, not to be disseminated to the public and are subject to rules regarding the permissibility of sharing such documents.  Such documents and the information contained therein constitutes Confidential Supervisory Information ("CSI").

It is critical that all Santander US Employees know that disclosure of CSI is generally prohibited and understand what to do when they come in contact with CSI.  Specific questions about how to handle CSI


should be directed to the SHUSA Compliance and/or the Legal and Corporate Affairs Department. For more information, including a review of definitions Santander's various regulators use for CSI, please refer to the *Santander US Control of MNPI and CSI Policy*.

### 2.10.4 Privacy and Safeguarding

Our customers (both individuals and businesses) entrust us with important and confidential information. Santander US is legally obliged under a number of regulations to protect the privacy of a customer's personal information including 501(a) requirements of the Gramm-Leach-Bliley Act. A violation of this trust is a serious matter and can impact Santander US' reputation and have significant legal and regulatory consequences.

It is imperative not to discuss or share a customer's personal information with anyone outside of Santander US or with Directors or other Employees who do not have a business need to know the information, nor in public areas where information may be overheard. When discussing Santander information on a conference call, always identify all participants on the call. It is an express violation of this Code to obtain confidential customer or Director or Employee information for personal interest or curiosity.

Examples of information that must be kept confidential (except when disclosure is authorized pursuant to this Code or *SHUSA Privacy Policy* or is required by law) include:

- Information classified as Secret, if disclosed to unauthorized parties, could materially compromise integrity, business secrets, and market positions, jeopardize important interests, or that would result, directly or indirectly, in serious adverse financial, reputational, or regulatory consequences. Data and information intended for internal use only on a strict "need-to-know" basis, authorized for only a small collection of individuals. For more information please refer to the *Santander US Data & Information Protection Standard.*

- Customer account information (e.g., account numbers and balances, information on a loan application, paycheck amounts, overdrafts, deposits, withdrawals, names, and addresses of Santander US customers). Such information should only be discussed using discretion with the signer(s) on the account or the loan applicant(s);

- Any information concerning Directors or Employees (including compensation, evaluations, leaves of absence, and medical examinations);

- Details of Santander US security measures (e.g., opening/closing procedures, alarm/camera systems, cash drawer limits, etc.); and

- Information regarding individuals and companies that conduct business with Santander US.


However, this obligation does not prevent you from reporting to the government or regulators conduct that you believe to be a violation of law. For more information, please refer to the *SHUSA Privacy Policy*. When unsure whether to share information with parties seeking Santander US information, contact your direct manager for confirmation.

### 2.10.5 Information Security

You may not install unauthorized software, applications, hardware or storage devices on Santander US-issued computers or mobile devices. The use of removable media devices, such as USBs, is prohibited; temporary exceptions may be obtained based on critical business need and must be approved by the designated Technology Risk Management team and Chief Information Security Officer ("CISO"). These exceptions require Santander US information stored on the device to be encrypted. Lastly, you should not access Santander US networks through unauthorized applications or devices or unsecured networks.

You must:

- Be prudent when opening e-mail attachments from unknown or suspicious senders, report suspicious emails to Information Security  and must not download their content onto Santander US devices;

- Protect your system passwords and personal IDs, immediately change your password and report your concern if you believe someone may have your password, and not share the information with other Employees, Directors, Supervisors, or others outside of Santander US;

- Never read the emails of other employees without their permission nor manipulate, falsify or use email accounts assigned to other users;

- Notify the sender of internal emails for which you are not the intended user and delete the email as soon as possible;

- Ensure the physical security of information or hardware that is assigned to you; and

- Never record calls unless approved by management to satisfy business or regulatory requirements.

Report any suspected or actual breaches of Santander's information or IT systems, abuse of IT resources, or violations of the above Information Security requirements to the Information Security department. For more information please refer to the *Santander US Information Security Policy and Standards*.

## 2.11  Recordkeeping

***Accuracy and Preservation of Records: Misleading/ Withholding Official Records***



# Completed

Respondent: Alyson Basso
Address: 300 Andover Street, Peabody, MA 01960
Phone: 9787503694
Email: Alyson.Basso@santanderinvestments.com
Date Completed: 12/26/2019 - 1:37 PM

## 2019 Annual Compliance Questionnaire

**2019 Annual Compliance Questionnaire**

1. Which of the following categories apply to you? If you are unsure, please contact Compliance at complianceadmin@santanderinvestments.com.

   Financial Consultant

**U4 Form Updates**

1.1. Do you understand that as a registered representative ("RR") of SSLLC you are obligated to maintain and update as necessary the information contained on your Form U4? Further, that such updates must be reported to the Firm promptly, but within 30 days of the change occurring?

   Yes

1.2. Do you understand that you are able to access the information contained on your Form U4 on the RegEd Xchange system?

   Yes

1.3. Is the personal information contained on your Form U4 accurate and current? Such information includes, but is not limited to, your home address, name, and other like information?

   Yes

1.4. Do you understand that SSLLC defines a customer complaint as any verbal or written statement of grievance made by a customer or a party acting on a customer's behalf regarding the actions taken in connection with the solicitation and/or execution of any transaction, servicing of the customer's account or the handling or movement of the customer funds?

Complaints must be immediately reported both to your Market Director/Supervisory Director and to Compliance. Complaints are submitted to Compliance by emailing a copy to complaints@santanderinvestments.com.

   Yes

1.5. Are you presently named in any customer complaint, arbitration, or lawsuit, or have you received a complaint that has not yet been reported to the Firm?

   No

1.6. Within the past year, have you been involved in any type of regulatory inquiry or investigation, or has the SEC, FINRA, any exchange, or state regulatory body, or insurance commission contacted and/or sanctioned you?

   No

1.7. Within the past year, have you been involved in any investment-related civil litigation, arbitration or administrative proceeding?

   No

1.8. Have you entered into a "compromise with creditors" or filed for or been subject to an involuntary bankruptcy in the past 10 years? A *"compromise with creditors"* occurs when an individual enters into an agreement with a creditor to pay less than the full principal amount owed to satisfy an outstanding debt.

 FINRA requires that RRs who have entered into a "compromise with a creditor" or bankruptcy, whether personally or as a control person for an organization, within the past 10 years answer "yes" to question 14K on their Form U-4.

   No

1.9. During your affiliation with SSLLC, have you had an open lien or unsatisfied judgement? A *lien* gives a creditor or tax authority the right to take possession of an individual's property in cases where the individual is unable to make payments they are either contractually or legally obligated to make. A *judgement* is a court order in which the losing party provides monetary damages to the winning party.

 FINRA requires that RRs report open liens and unsatisfied judgements by answering "yes" to question 14M on Form U-4.

   No

1.43. Have you acted or do you currently act as a trustee or custodian of any account, money, securities, or stock powers for any customers?

No

1.44. Do you have any accounts where you accept orders from someone other than the principal owner or person without written designated authority for the account?

No

1.45. Do you ensure that all customer funds or securities you receive are deposited no later than by noon time the business day following the receipt of the funds?

Yes

1.46. As required by Firm policy, do you record receipt of each check and stock/bond certificate on the Check Received/Return Log?

Yes

1.47. Do you ensure that initial payments or premiums are only made by a check payable to Pershing or the product vendor?

Yes

1.48. Do you obtain switch letters from clients in connection with a switch of one mutual fund (including closed end mutual funds) to another (excluding internal changes in the same family of funds)?

Yes

1.49. Do you provide copies of all documents signed by a customer to that customer for their records?

Yes

Policies and Procedures

1.50. Do you have on-line access to the FINRA Manual and MSRB Manual?

Yes

1.51. Do you certify that you have received, understand, and agree to abide by all policies, procedures and requirements contained in the Code of Conduct, Registered Representative Sales Manual, AML Manual, registered representative agreement and the Firm's compensation plan?

Yes

Communications with the Public

1.52. Do you understand that SSLLC's Social Media policy limits its Financial Consultants to static, Compliance approved LinkedIn Profiles? Further, the policy prohibits the use of any other social media site (e.g. Facebook, Twitter, etc.) and all interactivity related to the business of the Firm.

Yes

1.53. Do you currently have a LinkedIn profile that you use for business purposes or to otherwise hold out your role with SSLLC?

No

1.54. Other than LinkedIn, are you using the Internet or other social media for advertising or soliciting business?

No

1.55. Do you understand that advertising must be first approved in writing by the Firm's Compliance Department prior to use?

Yes

1.56. Do you understand the Firm's communication standards state that when communicating with a client or prospect, you must be cognizant of the Firm's Communications Content Standards, which include requirements for demonstrating:

- Principals of fair dealing and good faith
- Fair and balanced communications
- No willful omission of material facts
- No false, exaggerated, unwarranted or promissory claims
- Clear and not misleading disclosures regarding risks and potential benefits of a product or service
- Considerations related to the nature of the audience
- No predicting or projecting performance, implying that past performance will recur or make exaggerated claims, opinion or forecasts
- A recommendation must have a reasonable basis
- Not using customer testimonials in any fashion

Yes

1.57. Are you using business cards, letterhead and an email signature that have received written approval from the Firm's Compliance Department?

Yes



SECURITIES

## Completed

Respondent: Jonathan Lee
Address: 300 Andover Street, Peabody, MA 01960
Phone: 9787740742
Email: Jonathan.Lee@santanderinvestments.com
Date Completed: 12/26/2019 - 1:07 PM

## 2019 Annual Compliance Questionnaire

**2019 Annual Compliance Questionnaire**

1. Which of the following categories apply to you? If you are unsure, please contact Compliance at complianceadmin@santanderinvestments.com.

   Financial Consultant

U4 Form Updates

1.1. Do you understand that as a registered representative ("RR") of SSLLC you are obligated to maintain and update as necessary the information contained on your Form U4? Further, that such updates must be reported to the Firm promptly, but within 30 days of the change occurring?

   Yes

1.2. Do you understand that you are able to access the information contained on your Form U4 on the RegEd Xchange system?

   Yes

1.3. Is the personal information contained on your Form U4 accurate and current? Such information includes, but is not limited to, your home address, name, and other like information?

   Yes

1.4. Do you understand that SSLLC defines a customer complaint as any verbal or written statement of grievance made by a customer or a party acting on a customer's behalf regarding the actions taken in connection with the solicitation and/or execution of any transaction, servicing of the customer's account or the handling or movement of the customer funds?

Complaints must be immediately reported both to your Market Director/Supervisory Director and to Compliance. Complaints are submitted to Compliance by emailing a copy to complaints@santanderinvestments.com.

   Yes

1.5. Are you presently named in any customer complaint, arbitration, or lawsuit, or have you received a complaint that has not yet been reported to the Firm?

   No

1.6. Within the past year, have you been involved in any type of regulatory inquiry or investigation, or has the SEC, FINRA, any exchange, or state regulatory body, or insurance commission contacted and/or sanctioned you?

   No

1.7. Within the past year, have you been involved in any investment-related civil litigation, arbitration or administrative proceeding?

   No

1.8. Have you entered into a "compromise with creditors" or filed for or been subject to an involuntary bankruptcy in the past 10 years? A *"compromise with creditors"* occurs when an individual enters into an agreement with a creditor to pay less than the full principal amount owed to satisfy an outstanding debt.

   FINRA requires that RRs who have entered into a "compromise with a creditor" or bankruptcy, whether personally or as a control person for an organization, within the past 10 years answer "yes" to question 14K on their Form U-4.

   No

1.9. During your affiliation with SSLLC, have you had an open lien or unsatisfied judgement? A *lien* gives a creditor or tax authority the right to take possession of an individual's property in cases where the individual is unable to make payments they are either contractually or legally obligated to make. A *judgement* is a court order in which the losing party provides monetary damages to the winning party.

   FINRA requires that RRs report open liens and unsatisfied judgements by answering "yes" to question 14M on Form U-4.

   No

1.43. Have you acted or do you currently act as a trustee or custodian of any account, money, securities, or stock powers for any customers?

No

1.44. Do you have any accounts where you accept orders from someone other than the principal owner or person without written designated authority for the account?

No

1.45. Do you ensure that all customer funds or securities you receive are deposited no later than by noon time the business day following the receipt of the funds?

Yes

1.46. As required by Firm policy, do you record receipt of each check and stock/bond certificate on the Check Received/Return Log?

Yes

1.47. Do you ensure that initial payments or premiums are only made by a check payable to Pershing or the product vendor?

Yes

1.48. Do you obtain switch letters from clients in connection with a switch of one mutual fund (including closed end mutual funds) to another (excluding internal changes in the same family of funds)?

Yes

1.49. Do you provide copies of all documents signed by a customer to that customer for their records?

Yes

Policies and Procedures

1.50. Do you have on-line access to the FINRA Manual and MSRB Manual?

Yes

1.51. Do you certify that you have received, understand, and agree to abide by all policies, procedures and requirements contained in the Code of Conduct, Registered Representative Sales Manual, AML Manual, registered representative agreement and the Firm's compensation plan?

Yes

Communications with the Public

1.52. Do you understand that SSLLC's Social Media policy limits its Financial Consultants to static, Compliance approved LinkedIn Profiles? Further, the policy prohibits the use of any other social media site (e.g. Facebook, Twitter, etc.) and all interactivity related to the business of the Firm.

Yes

1.53. Do you currently have a LinkedIn profile that you use for business purposes or to otherwise hold out your role with SSLLC?

No

1.54. Other than LinkedIn, are you using the Internet or other social media for advertising or soliciting business?

No

1.55. Do you understand that advertising must be first approved in writing by the Firm's Compliance Department prior to use?

Yes

1.56. Do you understand the Firm's communication standards state that when communicating with a client or prospect, you must be cognizant of the Firm's Communications Content Standards, which include requirements for demonstrating:

- Principals of fair dealing and good faith
- Fair and balanced communications
- No willful omission of material facts
- No false, exaggerated, unwarranted or promissory claims
- Clear and not misleading disclosures regarding risks and potential benefits of a product or service
- Considerations related to the nature of the audience
- No predicting or projecting performance, implying that past performance will recur or make exaggerated claims, opinion or forecasts
- A recommendation must have a reasonable basis
- Not using customer testimonials in any fashion

Yes

1.57. Are you using business cards, letterhead and an email signature that have received written approval from the Firm's Compliance Department?

Yes

**EXHIBIT B**
**Representative Agreements**



## REGISTERED REPRESENTATIVE AGREEMENT

In consideration of SANTANDER Bank, N.A. ("Bank") employing you and giving you access to confidential and proprietary information and contacts belonging to the Bank, SANTANDER Securities LLC ("SSLLC"), and their affiliates (collectively referred to hereafter as "SANTANDER") and access to SANTANDER's office facilities, research and investment opportunities, facilities for executing, processing and clearing transactions, as well as other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, it is agreed as follows:

1.      <u>Registrations</u>.  You represent that you are a duly licensed registered representative in the securities industry.  You shall be a registered representative of SSLLC and may also be an investment advisor agent of SSLLC.  You shall also be a licensed insurance agent of SSLLC.  <u>Independent Contractor</u>. You are an independent contractor of SSLLC.  Nothing in this agreement shall be construed to create the relationship of employer and employee between you and SSLLC.  You shall never represent to the public that any relationship, other than that of independent contractor for securities and insurance business, exists between you and SSLLC.

      a.   <u>Termination of Independent Contractor Relationship</u>.

          i.   This Agreement shall be effective on the date of execution set forth below and shall automatically renew the May 1 next following and each May 1 thereafter until terminated.

          ii.   This Agreement may be terminated by either party at any time, without cause, by giving written notice to the other party.

          iii.   This Agreement is automatically terminated upon the cancellation or non-renewal of any required license. This Agreement may be terminated by SANTANDER at any time without notice for a breach of this Agreement by the Representative.

2.      <u>Duties</u>.  You shall be employed as a Financial Consultant, or such other title as Bank may designate from time to time.  You shall undertake SSLLC product sales and services for SANTANDER customers through such Bank branch locations as SANTANDER may designate from time to time.  You acknowledge and agree that your branch assignments may change from time to time, in SANTANDER's sole and absolute discretion.

      a.   You agree to indemnify SANTANDER and hold it harmless from any loss, cost or liability, including attorney's fees and costs, which result from your negligence, violation of securities rules or regulations, including federal and state investment advisory rules and regulations, or other misconduct. Attorney's fees, adverse settlements and/or judgments imposed on the you and/or SANTANDER where fault is not determined by a court of proper jurisdiction or a duly appointed arbitration panel, shall be shared by SANTANDER and you in the same proportion as the commissions and fees on transactions or accounts such as the one in dispute were shared. You shall notify SANTANDER promptly of any investigations, proceedings, customer complaints or similar matters in accordance with the requirements set forth in Santander's RR Manual.

b.  You shall not act in any manner whatsoever as an agent for any individual or company competitive in any respect with SANTANDER. You shall not (a) communicate or divulge or use for your benefit or for the benefit of any other, any information concerning the business and accounts of SANTANDER or any of its affiliates; in any way induce, attempt to induce or receive any benefit for inducing any employee or Representative of SANTANDER (or any affiliate of SANTANDER) or any person, firm, or corporation having any contract or arrangement with SANTANDER (or with any affiliate of SANTANDER), either to leave such employment or association or to breach or terminate the contract or arrangement; and (b) in any way induce or attempt to induce any sponsor of a financial or insurance product offered or to be offered by SANTANDER to cease to have such product offered through SANTANDER or to offer such product through you.

c.  You shall conduct yourself and your affairs in a professional manner consistent with the building of a quality reputation for yourself and SANTANDER.

d.  You shall not engage in any outside business activity without prior written notification and approval from SANTANDER. You shall provide SANTANDER with all relevant documents pertaining to your outside activities upon request of SANTANDER.

e.  You agree to satisfy all FINRA and SANTANDER continuing education requirements in a timely manner.

f.  You agree to the terms, conditions, and licensing requirements posted for use of all SANTANDER distributed software, as amended from time to time.

g.  You acknowledge, understand, and agree that for our mutual protection, SANTANDER may electronically record telephone conversations. You agree not to record any telephone conversation without the express written authorization of SANTANDER and the individual(s) engaged in the conversation.

h.  You shall immediately (but in no event later than twenty-four (24) hours from receipt) report all customer complaints (verbal and written) and regulatory inquiries to SSLLC's Compliance Department.

i.  You shall represent to all customers and prospective customers, whenever you are soliciting purchases or interviewing customers in connection with securities or insurance transactions, that you are acting as a Registered Representative of SSLLC, that orders for securities will be placed through SSLLC, and that you shall sell only products approved by SSLLC or as otherwise agreed to in writing with SSLLC.

3.  <u>At-Will Employment</u>. Your employment with the Bank shall be strictly on an at-will basis. Either you or the Bank has the right to terminate the relationship at any time for no reason or for any reason not otherwise prohibited by law. You understand that you have no assurances or guarantee of continued employment.

4.  <u>No Restrictions</u>. You represent that, except for any agreements as have been disclosed to SANTANDER, you are free to accept employment without any contractual restrictions on your ability to perform fully your duties for SANTANDER. You acknowledge that you have been directed not to bring to, or use at, SANTANDER any documents, confidential information, or trade secrets in any form from any prior employer, and you agree that you have not, and will not, do so.

5.      <u>Compensation</u>.

      a.      <u>Compensation Plan</u>.  Except as set forth in, and in all events subject to, the terms of your offer letter from the Bank, you will be paid on a commission basis in accordance with SANTANDER's compensation plan for Financial Consultants, which is subject to change from time to time in SANTANDER's sole and absolute discretion.  You acknowledge and agree that SANTANDER makes no representations or promises as to the amount of any commissions or other compensation you may expect to earn at any time, and further cannot guarantee and makes no guarantees whatsoever with respect to any investment book of business you may be assigned to service or your ability to generate revenue, including, but not limited to any guarantees regarding amount of deposits or assets under management of any of Bank's retail branches, or referrals by Bank or its affiliates to you.

      b.      <u>Commission Charge-backs</u>. You acknowledge that investment products often have charge-back periods in which the purchaser may relinquish the right to the investment and the sponsoring firm may demand reimbursement of the commission associated with the transaction. You shall be responsible for promptly repaying your portion of any commission charge-back(s), whether or not you are an employee of the Bank at the time of the commission charge-back.

      c.      <u>Commissions Not Deemed Earned Until Received by SANTANDER</u>. You shall not have earned or otherwise become entitled to any commission until SANTANDER has received payment in full of such commission from the dealer or issuer. You shall have no enforceable right to payment of any commission until such commission shall have been deemed to be earned pursuant to the provisions hereof and the applicable commission plan. Any record, account statement or other report from SANTANDER to you showing any commissions as "earned" by you shall, as to any commissions not yet received by SANTANDER, be deemed to be a statement of potential earned commission by you and shall not in any manner create a liability for payment on the part of SANTANDER until provisions hereof and the applicable commission plan have been satisfied.

      d.      <u>Rejection of Transactions</u>.  You acknowledge and agree that SANTANDER management has complete and unfettered discretion to accept or reject any sale or transaction or contemplated sale or transaction, for any reason, without regard to any loss of earnings or commissions that could have been earned by you.

      e.      <u>Withholdings</u>.  All compensation and commissions payable to you shall be subject to applicable state, federal, and local withholding requirements and any such elective withholdings (e.g. 401(k)) in which you shall have elected to participate.

      f.      Upon termination by either party to this Agreement, SANTANDER shall retain sufficient monies to pay any fees or charges incurred or anticipated, or other monies owed or potentially owed to SANTANDER, in connection with: (i) your failure to comply with any provisions of this Agreement; (ii) your securities transactions or investment advisory accounts prior to your termination; and (iii) any Fees, charges or other monies due to SANTANDER under this Agreement.

      g.      You acknowledge that SANTANDER is not required to pay any Commissions or advisory fees on termination except as specified herein, and that SANTANDER may elect to pay other terminated Representatives bonuses in a manner inconsistent with these provisions and that such shall not give you any right whatsoever to similar treatment.

      h.     Upon termination, you shall cease using the name SANTANDER, shall no longer hold yourself out as a Registered Representative or Investment Advisor Representative and shall return all materials bearing the SANTANDER name to SANTANDER.

      i.     In the event that your association with SANTANDER is terminated, with or without cause, and Representative owes or is likely to owe monies to SANTANDER (as a result of a customer complaint, trade error or otherwise), you agree to grant SANTANDER a lien and/or security interest in any and all non-qualified accounts maintained at SANTANDER and further agree not to transfer or liquidate such accounts without the prior written approval of SANTANDER. In the event of a dispute over the amount of any such debt to SANTANDER or SANTANDER's right to refuse to transfer or liquidate an account, the parties agree to submit the matter to arbitration before FINRA and you agree to pay all legal fees and costs incurred by SANTANDER in connection with such arbitration.

6.    <u>Compliance with Securities Laws and Supervisory Requirements</u>.

You are required to conform to the rules and regulations of FINRA, SEC, NFA, CFTC, MSRB and the various states, to the applicable federal and state laws, and to conform to the established customs, standards and policies and procedures of the securities industry and SSLLC. In complying with such laws, rules and regulations, you shall accept such supervision and control by your OSJ, supervisors and officers of SSLLC as is necessary to enforce such laws, regulations and rules.

You shall at all times comply with all SANTANDER policies and procedures, as well as all applicable state and federal securities laws, regulations, and the rules of the various exchanges and other regulatory bodies to which you and SANTANDER are or may become subject, including but not limited to the following:

      a.     You shall take all actions necessary, and hereby agree that SANTANDER may take any action on your behalf, as necessary, in order to obtain all securities, insurance and any other licenses required to sell securities and insurance products and investment advisory services (if applicable) as a registered representative, investment advisor agent or licensed insurance agent of SSLLC.

      b.     You shall only conduct business in those states in which you and SSLLC are appropriately licensed or registered to conduct such business, and at all times conform you actions to the legal and regulatory requirements of said licensure.

      c.     You shall execute for customers purchases and sales of securities and insurance included in SANTANDER's program from time to time, and shall not execute any purchase or sale of securities or insurance not included in such programs.

      d.     You shall provide investment advice and recommendations to customers in accordance with the limitations of the applicable customer suitability profile and the customers' investment goals.

      e.     You shall provide to prospective purchasers a current prospectus or other offering materials when required by federal and/or state securities laws, shall explain fully the terms of any security or investment offering for sale to a customer, shall make no untrue or misleading statements or representations, shall not omit any material information or facts pertaining to any

aspect of the transaction or sale, and shall comply with all laws respecting offers and sales of securities and advising persons on such matters.

f. You shall provide insurance customers with insurance product illustrations and insurance planning advice.

g. You shall perform such other duties as instructed and as are customarily performed by one holding the position of a registered representative in a retail securities brokerage firm and of an insurance agent in an insurance agency, respectively.

h. You will strictly adhere to all of the rules and regulations established for the conduct of Financial Industry Regulatory Authority ("FINRA") registered representatives including as set forth in SSLLC's Registered Representative Manual and/or compliance manuals and procedures, copies of which you acknowledge have been provided to you, and which are incorporated by reference herein, as such may be modified from time to time.

i. You agree to use only current materials such as prospectuses, sales literature, letters, marketing materials, and advertising that have been approved by SSLLC in accordance with its rules for current use.

j. You shall not solicit business through mailings, advertisements, electronic communication, or other media unless the contents have been examined and approved by SSLLC according to its rules.

k. You shall be responsible for maintaining the appropriate licenses, permits, or appointments at all times while this Agreement is in force.

l. You shall be familiar with, have access to a current copy of, and comply with the Registered Representative Manual and/or Written Supervisory Procedures (as applicable to your role), and other published compliance and procedural directives from SSLLC. You agree to be subject to SSLLC's disciplinary program as outlined in the Written Supervisory Procedures.

m. You shall respond to requests (home office, OSJ, client, etc.) promptly but no later than three (3) business days after receipt of the request.

n. You shall be familiar with and maintain a current copy of SSLLC's Approved Product List and will not offer unauthorized products for sale.

o. You shall maintain accurate and complete files and records of all transactions in connection with or covered by this Agreement, as specified in the Registered Representative Manual and/or Written Supervisory Procedures (as applicable to your role) and other SSLLC Compliance Alerts or other similar written bulletins.

p. You will assist SSLLC in field office reviews and compliance investigations as requested. This includes but is not limited to providing access to client files, rep files, bank records, tax returns, outside and/or personal email accounts, and records of outside business activities.

q. You shall make no written or oral misrepresentation concerning products offered for sale by or through SSLLC.

r.    You shall refrain from paying or offering to pay any rebate of commission, directly or indirectly

s.    You shall maintain a current and up to date Form U-4 by providing timely, written notice to SSLLC of any changes, as necessary.

7.    <u>Complaints, Discipline, and Legal Proceedings</u>.

a.  You agree to notify SSLLC immediately if any of the following occur:

i.  Criminal proceedings, investment-related civil actions, regulatory/disciplinary actions, changes in financial circumstances (Example: potential bankruptcy, judgments, liens, levies or compromises), or investigations, inquiries or document requests by state or federal regulatory agencies or an SRO.

ii.  Any legal or regulatory proceedings or inquiries by an attorney, or by any state or federal agency or any SRO relating to any matter covered under this Agreement.

iii.  Any correspondence that is or may become a customer complaint in accordance with SSLLC's policies and procedures.

b.  You agree to cooperate with all requests of SSLLC's for information in a timely fashion, and to deliver to SSLLC all materials held by you which are related to any such customer complaint, legal proceeding, action or inquiry, along with all file materials.

8.    <u>Confidentiality</u>.

a.    In connection with your employment with SANTANDER you will obtain or have access to certain proprietary, privileged or other confidential information of SANTANDER's clients or customers, or leads, prospective clients or customers.  It is understood and agreed that the identities of and all information concerning such customers and prospects, whether maintained on a physical piece of paper (in original or copied form), stored electronically on a computer, PDA, BlackBerry, mobile phone or other device, or otherwise retained in your memory or memorialized in any form whatsoever, are confidential information, constitute a trade secret, and are the sole and exclusive property of SANTANDER ("Confidential Information").  Confidential Information also includes, but is not limited to, business plans, strategies, products, services, programs, systems, databases, methods of operation, financial information, policies, procedures, or personnel information of SANTANDER, as well as any non-public information disclosed by a client or customer, potential client or customer, or other third party which SANTANDER has agreed or is otherwise obligated to keep confidential, including, but not limited to, financial information concerning such individual or entity.  You agree that Confidential Information is extremely valuable and that SANTANDER takes all reasonable measures to maintain its confidentiality and to guard its secrecy. This information is not generally known outside of SANTANDER and within SANTANDER this information is confidential and is used only on a "need to know" basis. You acknowledge and agree that this information is developed and acquired by great expenditures of time, effort, and money and that it is unique and cannot be lawfully duplicated or easily acquired.

b.    In light of the highly competitive nature of the financial services industry, you agree to hold all Confidential Information in strictest confidence and to use such Confidential Information only as necessary in the performance of your duties for SANTANDER. Upon termination of your employment for any reason, you will immediately return all Confidential

Information, relinquish access to, possession of and control over, any such information in any form, and you agree never to use or disclose such information even if retained in your memory. You acknowledge and agree that this means that upon termination of your employment you may not use client or prospects lists you could otherwise recreate from your memory.

c.      You agree that all Confidential Information used or created by you during the course of your employment with SANTANDER is the property of SANTANDER. You hereby assign to SANTANDER all rights to such Confidential Information (patentable or not) conceived by you during the course of your employment and which (i) relates to SANTANDER's research and development, technical or managerial efforts or (ii) is suggested by you or results from your work for SANTANDER. You will disclose promptly to SANTANDER management the full details of any idea, concept, improvement, method, invention, discovery, writings, programming, documentation, source code, object code, processes, compilations, design or other work or intellectual property, tangible or intangible, and records thereof that you may make, create or otherwise contribute ("Works"), either in performing your duties as an employee or that relates to your employment at SANTANDER. Irrespective of such disclosure you hereby assign and agree to assign all rights in any patents, patent applications, copyrights, disclosures, trade secrets, or other intellectual property to SANTANDER. You agree that all Works shall be deemed "works made for hire", and that the appropriate SANTANDER entity shall be deemed the author and sole, exclusive owner thereof. All records of or pertaining to the Work shall also be the property of SANTANDER. You agree to execute any and all documents necessary or desirable in SANTANDER's judgment to confirm the appropriate SANTANDER entity's ownership interest in the Work or to document, perfect, record, or confirm the rights given to SANTANDER hereunder.

d.      Immunity for Certain Confidential Disclosure. Notwithstanding the foregoing, federal law provides that individuals shall not be criminally or civilly liable under any federal or state trade secret law for disclosure of a trade secret which (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

9.      Restrictive Covenants; Injunctive Relief. You acknowledge and agree that:

a.      During your employment with SANTANDER you shall not act in any manner whatsoever, whether directly or indirectly, as an employee, agent, or owner (other than as a shareholder of fewer than one percent (1%) of the shares of any publicly traded corporation), for any individual or entity competitive in any respect with SANTANDER.

b.      For a period of twelve (12) months following the termination of your employment with SANTANDER for any reason, you agree that you will not communicate, directly or indirectly in whatever form, with any customer, client or potential client of SANTANDER whose name became known to you as a direct or indirect result of your employment with SANTANDER (whether you or such customer, client or potential client first initiates contact) for the express or implied purpose of inviting, encouraging or requesting such customer, client or potential client: (i) to transfer their securities brokerage, investment advisory, bank or insurance business to you and/or your new employer; (ii) to open a new account or purchase a new policy with you and/or your new employer; or (iii) to otherwise discontinue or reduce such client's existing business relationship with SANTANDER or conduct securities brokerage, investment advisory, bank or insurance business with someone other than SANTANDER. You agree that the foregoing prohibition

includes any targeted mailing, telephone call, or other communication that is made directly to one or more customers, clients or potential clients of SANTANDER.

c.       At all times during your employment with SANTANDER, and for a period of twelve (12) months following termination of such employment for any reason, you agree not to encourage, recruit or solicit, either directly or indirectly, any employee or representative to terminate his or her employment with SANTANDER, or to join you or any new firm employing you or in which you may become affiliated or registered, or to otherwise interfere with the relationship between SANTANDER and any of its employees.

d.       In the event you breach, or SANTANDER reasonably anticipates that you are about to breach, any of the covenants of paragraph 7 or the foregoing covenants in this paragraph 8 of this Representative Agreement, you agree and recognize SANTANDER will suffer immediate and irreparable harm and that money damages will not be adequate to compensate SANTANDER or to protect and preserve the status quo. Therefore, YOU AGREE THAT SANTANDER MAY OBTAIN A TEMPORARY RESTRAINING ORDER, WITH OR WITHOUT NOTICE, and a PRELIMINARY and PERMANENT INJUNCTION ordering:

i.       that you return to SANTANDER immediately all Confidential Information, including customer information, lists and records, whether original, copied, duplicated, reproduced, computerized, handwritten, recreated from memory, compiled, or stored in any way whatsoever, and that you be enjoined and restrained from using or disclosing all such information, lists and records;

ii.       that, for a period of twelve (12) months following the termination of your employment with SANTANDER, you be enjoined and restrained from communicating, directly or indirectly in whatever form, with any customer, client or potential client of SANTANDER whose name became known to you as a direct or indirect result of your employment with SANTANDER for the express or implied purpose of inviting, encouraging or requesting such customer, client or potential client: (i) to transfer their securities brokerage, investment advisory, bank or insurance business to you and/or your new employer; (ii) to open a new account or purchase a new policy with you and/or your new employer; or (iii) to otherwise discontinue or reduce such client's existing business relationship with SANTANDER or conduct securities brokerage, investment advisory, bank or insurance business with someone other than SANTANDER.

iii.       that, for a period of twelve (12) months following the termination of your employment with SANTANDER, you be enjoined and restrained from encouraging, recruiting or soliciting, directly or indirectly, any employee or representative to terminate his or her employment with SANTANDER, or to join you or any new firm employing you or in which you become affiliated or registered, or to otherwise interfere with the relationship between SANTANDER and any of its employees.

e.       The foregoing rights to obtain such relief shall be without prejudice to any other right or remedy to which SANTANDER may be entitled.

f.       You acknowledge and agree that the foregoing covenants, restrictions, and remedies are necessary to protect the legitimate business interests of SANTANDER, including, without limitation, customer information and goodwill, and you consider the restrictions to be reasonable in duration and scope for such purpose. You further agree that the existence of any claims or causes of action by you against SANTANDER, whether predicated on this Representative

Agreement or otherwise, shall not constitute a defense to the enforcement of your obligations hereunder.

g.       In the event of a breach by you of any covenant set forth in Section 8, the term of such covenant shall be extended by the period of duration of such breach.

h.       Until the termination of the period during which your activities are limited by this Agreement, you will, within ten (10) days after accepting any employment, consulting engagement, engagement as an independent contractor, partnership or other association, advise SANTANDER of the identity of the new employee, client, partner or other person with whom you have become associated. SANTANDER may serve notice upon each such person that you are bound by this Agreement and furnish each such person with a copy of this Agreement.

i.       You and SANTANDER agree that the non-solicitation provisions set forth in Section 8 are ancillary to this Agreement, which is an enforceable agreement. You agree that any contact by you with a customer, client or prospective client of SANTANDER during the Applicable Period may lead to your unauthorized use of the Confidential Information and/or solicitation of such customer, client or prospective client, even if such use was unintentional. Because it would be impossible, as a practical matter, to monitor, restrain or police your use of such Confidential Information other than through your covenants contained in this Section 8, you acknowledge that such restrictions are the narrowest method to protect SANTANDER's interests, and the narrowest method of enforcing consideration for your receipt of Confidential Information.

j.       The provisions of this paragraph shall survive the termination of this Representative Agreement and of your employment/registration hereunder, irrespective of the reasons for such termination.

10.    Non-Disparagement. During your employment and for a period of twelve (12) months following the termination of your employment with SANTANDER for any reason (the "Applicable Period",) you agree you will take no action which is intended, or would reasonably be expected, directly or indirectly, to materially harm SANTANDER, any affiliate of SANTANDER, their respective businesses, officers, directors, or employees, harm the reputation of any of the foregoing persons or entities, or which would reasonably be expected to lead to unwanted or unfavorable publicity to any of the foregoing Persons or entities. Nothing in this clause prohibits or restricts you from initiating communications directly with, or responding to any inquiry from, or providing testimony to the SEC, FINRA, or any other self-regulatory organization or any other state or federal authority or agency, or making other disclosures that are protected under the whistleblower protections of applicable federal or state law or regulation or applicable self-regulatory organization regulation. You understand that you do not need prior authorization to make such reports or disclosures and are not required to notify SSLLC that you have made such reports or disclosures.

11.    Return of Property.   You agree that upon termination of your employment with SANTANDER, you will no longer hold yourself out as an employee or representative of SANTANDER. In addition, you will immediately surrender all equipment, corporate credit cards, as well as all Confidential Information, records, documents, and other information in your possession which relate to customers and/or business of SANTANDER, including but not limited to product information, product lists and similar documents, research reports, representative lists and similar documents.

12.    Indemnification. You agree to indemnify Bank, SSLLC, and their affiliates, and hold them harmless from any and all actions, awards, claims, causes of actions, counterclaims, court costs, debts, demands, expenses, judgments, liabilities, or other such obligations of any nature which are asserted, made,

prosecuted, or otherwise obtained against them, including but not limited to attorneys' fees and costs, which arise out of or are related to: (1) any act, omission or errors by you while employed, registered, or otherwise affiliated with SANTANDER; (2) any act, omission or errors by you concerning any person or entity prior to the execution of this Representative Agreement; (3) your prior employment or affiliation with any person or entity, including the termination of any prior employment or affiliation; (4) your acceptance of employment/registration with SANTANDER; (5) your violation (including but not limited to any alleged violations) of any securities rules, laws, or regulations; (6) your violation of any term of this Representative Agreement; or (7) other misconduct by you. This indemnification shall extend to and encompass any and all actions, attorneys' fees, awards, claims, causes of actions, counterclaims, court costs, debts, demands, disputes, expenses, judgments, liabilities, or other such obligations, including but not limited to charge backs and refunds on sales of commissionable products, client disputes, litigation, and/or complaint resolution procedures.

13. _Prior Employment_. You expressly agree and acknowledge that you are solely responsible, and SANTANDER shall have no liability, for any amounts charged to or owed by you to any previous employer, including but not limited to any charge backs, advancements, loan repayments, training or educational reimbursements, bonus reimbursements or any other money or consideration owed by you to any previous employer or affiliate.

14. _Notice to Future Employers_. In the event you change employment within the securities industry or otherwise become employed, registered, or otherwise affiliated with a firm in competition with SANTANDER you (a) agree to advise such new employer or firm regarding the existence of this Representative Agreement and the terms contained herein; (b) agree to provide a copy of this Representative Agreement to any putative new employer or firm prior to your acceptance of employment or other affiliation with said employer or firm; and (c) authorize SANTANDER to provide a copy of this Representative Agreement to your new employer or firm.

15. _Miscellaneous_.

a. This Agreement and any documents executed in accordance herewith (including compensation plans) are subject to change by SANTANDER upon written notice to you. Such notice may be provided electronically. Unless you notify SANTANDER in writing that you are officially terminating you registration with SANTANDER, and that notification is received at SANTANDER prior to the effective date of the changed schedule(s), you will be bound by the terms of the changed Agreement, including any Agreement relating to compensation.

b. You hereby expressly agree to submit to final and binding arbitration before FINRA any and all disputes, claims or controversies relating to your association with or termination from SANTANDER. Such disputes, claims, or controversies shall be arbitrated in accordance with FINRA rules. The parties hereby agree that such arbitration shall occur in Boston, Massachusetts. You expressly give up the right to sue in a court of law or equity, including the right to a trial by jury. Specific examples of disputes, claims or controversies that are required to be arbitrated include, but are not limited to, allegations of unlawful termination, sexual or racial harassment or discrimination on the job, gender discrimination, and claims of age or handicap discrimination.

Nothing in this Agreement shall be construed to alter the nature of the independent contractor relationship between you and SANTANDER, or to confer on you any right of

continued association for a particular term of time or require cause for the termination of the relationship.

c.   This Agreement, along with any amendments hereto, encompasses the entire agreement of the parties with respect to the subject matter hereof, and supersedes and cancels all previous understandings, representations, negotiations and agreements between the parties, whether oral or written. The parties hereby represent that they have not relied on any representation, assertion, guarantee, or other assurance, except those set out in this Agreement. The parties hereby waive all rights and remedies, at law or in equity, arising or which may arise as the result of a party's reliance on such representation, assertion, guarantee, except those associated with the willful misconduct or fraud of any person or party taking place prior to, or contemporaneously with, the execution of this Agreement.

d.   You agree that this Agreement, and the benefits attendant thereto (including, without limitation, commissions or payments made pursuant to this Agreement) is non-transferable and non-assignable by you without prior written consent of SSLLC.

e.   <u>Choice of Law</u>.   This Representative Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to conflicts of law provisions.

f.   <u>Recovery of Legal Fees and Costs</u>.   In addition to any other relief to which SANTANDER may be entitled, you agree to pay all costs and expenses, including, without limitation, attorneys' fees and costs, incurred by SANTANDER in the enforcement or interpretation of this Representative Agreement or in any legal proceeding in which SANTANDER is made a party which arises from or is incidental to the existence or enforcement of this Representative Agreement.

16.   <u>No Waiver</u>.   A waiver by SANTANDER of any breach of this Agreement shall not be construed to be a waiver of any subsequent or other breach, and no waiver shall be deemed made, unless the same is so acknowledged by SANTANDER in writing.

17.   <u>Publicity</u>.   You acknowledge that SANTANDER, in its sole discretion and in furtherance of its business objectives, may choose to release information about you to certain internal and external media publications, including but not limited to information pertaining to your name, date of hire, biographical facts, office location, employment history, education, and/or annual production.   You grant SANTANDER permission and authorize the release of such information to electronic and print publications and local news media.   You may revoke this consent/authorization by providing written notice of your revocation to your immediate supervisor referencing this provision.

18.   <u>Severability</u>.   In the event that any provision of this Representative Agreement shall be determined to be invalid or unenforceable, in whole or in part, the remaining provisions of this Representative Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law.

19.   <u>Integration and Merger</u>.   **YOU ACKNOWLEDGE AND AGREE THAT NO ONE HAS MADE ANY ORAL REPRESENTATIONS WITH RESPECT TO THE TERMS OR ANY ASPECT OF EMPLOYMENT AT SANTANDER WHICH ARE NOT CONTAINED HEREIN AND THAT YOU ARE NOT RELYING ON ANY SUCH ORAL REPRESENTATIONS IN CONNECTION WITH YOUR DECISION TO ACCEPT EMPLOYMENT WITH, OR, IF APPLICABLE, ANY LOAN FROM, SANTANDER..   IN PARTICULAR, EXCEPT AS**

OTHERWISE EXPRESSLY SET FORTH IN THIS REPRESENTATIVE AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT SANTANDER HAS MADE NO PROMISES OR REPRESENTATIONS WHATSOEVER CONCERNING THE BRANCHES OR TERRITORY YOU SHALL BE ASSIGNED TO SERVICE, THE EXISTENCE, VALUE OR PRODUCT TYPE OF ANY ASSETS UNDER MANAGEMENT OR BOOK OF BUSINESS YOU MAY BE ASSIGNED TO SERVICE, THE EXISTENCE, QUANTITY OR QUALITY OF REFERRALS YOU MAY RECEIVE, OR THE VALUE OF ANY COMMISSIONS, COMPENSATION, SALARY OR OTHER REMUNERATION YOU MAY EARN OR MAY EXPECT TO EARN.

      20.   <u>Assignment</u>.  SANTANDER's rights under this Representative Agreement shall be freely assignable by them, and shall inure to the benefit of their successors and assigns, affiliated entities, and any current or future party-in-interest.

      21.   <u>Modifications</u>.  Any alteration to, modification of, or change in this Representative Agreement shall not be valid unless in writing and executed by you and a duly authorized officer of SANTANDER.

      22.   <u>Advice of Counsel</u>.  You represent and warrant that you have read and fully understand the terms and provisions of this Representative Agreement, have had an opportunity to review this Representative Agreement with legal counsel, and have executed this Representative Agreement based upon your own judgment and advice of independent legal counsel (if sought).

YOU ACKNOWLEDGE AND AGREE THAT SIGNING THIS REPRESENTATIVE AGREEMENT IS A CONDITION OF EMPLOYMENT WHICH CONDITION YOU UNDERSTOOD BEFORE ACCEPTING EMPLOYMENT WITH SANTANDER.

**REPRESENTATIVE**                 **SANTANDER SECURITIES LLC**

_____
\*Electronic signature provided through
Compliance platform

By: _____
Name/Title:  Alan Chabot, President & CEO

By: _____
Name/Title:  Jonathan Snyder, Chief Financial Officer

**SANTANDER BANK, N.A.**

By: _____
Name/Title

# View Disclosure

**ID:**                           2790836

**Created By:**                   Basso, Alyson

**Created Time:**                 12/18/17 10:56 AM

**Approver 1:**                   Blackstone, Carolyn

**Approval1 Time:**               12/28/17 09:18 AM

**Status:**                       Approved

| | |
|---|---|
| **Employee** | Basso, Alyson |
| **Affirmation Type** | 2018 Registered Representative Agreement |
| **Electronic Signature - Representative Name** | alyson basso |
| **Time** | 1055 |
| **Please select the applicable option.** | ⊙  A.M. |
| | ○  P.M. |

[ Reopen ]  [ Cancel ]  [ Edit ]

# Withdraw

Withdrawal Reason

[                                                                    ]

[ Withdraw ]

# Comment Log

Asterisk ( * ) indicates comment is not visible to the employee

| Time | Creator | Comment |
|------|---------|---------|
| 12/28/17 09:18 AM | System | Request was assigned to COMPLIANCE in "Pending Approval" status. Carolyn Blackstone approved the request, making the status "Approved". |

# View Disclosure

**ID:**                     2805331

**Created By:**             Lee, Jonathan

**Created Time:**           01/02/18 01:16 PM

**Approver 1:**            Vallee, Robert

**Approval1 Time:**        01/08/18 03:52 PM

**Status:**                Approved

| | |
|---|---|
| **Employee** | Lee, Jonathan |
| **Affirmation Type** | 2018 Registered Representative Agreement |
| **Electronic Signature - Representative Name** | Jonathan Lee |
| **Time** | 1:15 |
| **Please select the applicable option.** | ○ A.M. |
| | ◉ P.M. |

[ Reopen ]  [ Cancel ]  [ Edit ]

## Withdraw

Withdrawal Reason

[                                                                                  ]

[ Withdraw ]

## Comment Log

Asterisk ( * ) indicates comment is not visible to the employee

| Time | Creator | Comment |
| --- | --- | --- |
| 01/08/18 03:52 PM | System | Request was assigned to COMPLIANCE in "Pending Approval" status. Robert Vallee approved the request, making the status "Approved". |